725 F.2d 584
 COMMODITY FUTURES TRADING COMMISSION, Plaintiff-Appellee,
Howard Barber, Applicant in Intervention-Appellant,
v.
CHILCOTT PORTFOLIO MANAGEMENT, INC., Chilcott Commodities
Corporation, Thomas D. Chilcott, Thomas D.
Chilcott d/b/a Chilcott Futures Fund and
David Neenan, Defendants-Appellees,
and
James P. Johnson, Receiver-Appellee.
 No. 82-1261.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 19, 1984.
 
 Elizabeth Duncan, Winterset, Iowa, for Howard Barber, applicant in intervention-appellant.
 Dennis A. Dutterer, General Counsel, Kenneth M. Raisler, Deputy General Counsel, and Gregory C. Glynn, Associate General Counsel, Washington, D.C., for Commodity Futures Trading Commission, plaintiff-appellee.
 Arthur E. March, Jr. of March, Myatt, Korb, Carroll & Brandes, Fort Collins, Colo., for James P. Johnson, receiver-appellee.
 Before SETH, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 By agreement of the parties, this appeal is submitted on the briefs, both parties waiving oral argument.
 
 
 2
 Chilcott Commodities Corporation (CCC) is a Michigan corporation with its principal place of business in Fort Collins, Colorado. Chilcott Portfolio Management, Inc. (CPM) is a Colorado corporation with its principal place of business in Fort Collins, Colorado. Thomas D. Chilcott, a resident of Fort Collins, Colorado, is the president and chief operating officer of both corporations. Chilcott and CCC have been acting as a commodity pool operator for a commodity pool known as Commodities Futures Fund and sometimes referred to by Chilcott as Chilcott Portfolio Management or CPM. A commodity pool operator is a person engaged in a business which is of the nature of a business trust, and in connection therewith he solicits, accepts, or receives money from the investing public for the purpose of trading in commodity futures contracts. As of April 1, 1981, CPM had approximately 400 such commodity investors.
 
 
 3
 On March 31, 1981, Howard Barber, a resident of Oregon, transferred some $70,000 from his bank to CPM's account in a Fort Collins bank.
 
 
 4
 On June 17, 1981, the Commodity Futures Trading Commission instituted the present action against CCC, CPM, and Thomas Chilcott, alleging various violations of the Commodity Exchange Act, 7 U.S.C. Sec. 1, et seq. More specifically, the Commission alleged that the defendants were guilty of fraud and deceit in connection with the sale of commodity futures contracts, and that they had failed to make relevant disclosures. The Commission sought a temporary restraining order and a preliminary and permanent injunction against further violations of the Act, and, by way of ancillary and additional relief, sought the appointment of a receiver who would take immediate control of all assets of the defendants. By consent, appropriate injunctive orders were entered, and a receiver was appointed. Pursuant to his appointment, the receiver has been, and is, marshalling the assets of the defendants, setting up claim procedures, with the intent to eventually distribute any assets to the defendants' creditors and investors.
 
 
 5
 On July 27, 1981, Howard Barber, the appellant, filed a petition to intervene in the proceeding brought by the Commission and asked that he be allowed to sue the receiver for the return of the $70,000 which he gave the defendants on March 31, 1981, claiming, in essence, that the $70,000 is held by the defendants as a "mere bailee." Barber's position is that he had a right to intervene under Fed.R.Civ.P. 24(a)(2). The district court denied Barber's petition to intervene and his related request for leave to sue the receiver, and Barber appeals the order entered.
 
 
 6
 As indicated, Barber's position is that, under Fed.R.Civ.P. 24(a)(2), he had a right to intervene in the action brought by the Commission against Chilcott and his corporations. Rule 24(a)(2) provides, in part, that not only must the applicant for intervention have an interest in the property which is the subject of the proceeding in which he seeks to intervene, but he must also show that the disposition, without his presence, of the action in which he seeks to be involved as a party would impair or impede his ability to protect his claimed interest. In this connection, the district court observed as follows:
 
 
 7
 Moreover, although movant has alleged a claim on the subject of this action, he will have the opportunity of asserting his claim through the claims procedure, which is currently being established by the Receiver and this Court. The protection set forth in that procedure will allow Mr. Barber to assert any claim to priority he may have and provide for appeal of any action on that claim.
 
 
 8
 As indicated, then, the district court was of the view that in denying Barber's petition to intervene and to sue the receiver, Barber was not being foreclosed from asserting his claim, including his suggestion that his claim was entitled to priority, under the claims procedure set up by the Receiver. The district court believed such was preferable to having Barber, and possibly numerous other persons, intervene and become full-fledged parties to the litigation started by the government. In thus holding, the district court did not err. See generally Securities and Exchange Commission v. Everest Management Corporation, 475 F.2d 1236 (2d Cir.1972).
 
 
 9
 Ralph Ewing Clark, in A Treatise on the Law and Practice of Receivers, Sec. 541(a), (3rd Ed.1959) comments as follows:
 
 
 10
 However, when a general receiver is appointed of the property of an individual or a corporation for the purpose of collecting and administering the property and distributing it among all those entitled to receive it, then a different situation is presented. The court in such a case will generally make an order directing creditors to present their claims to the receiver. By presenting the claim to the receiver a creditor becomes a quasi-party to the suit. Such a presentation of claims is not equal to an intervention or the bringing of a separate suit. If the claim, however, is rejected in whole or in part by the receiver or by a master appointed to hear such a claim, then the claimant may apply to the court for adjudication of the claim, which application is in the nature of an appeal from the decision of the receiver....
 
 
 11
 Claims so filed should be presented to the receiver duly sworn to, advising the receiver and the court as to the amount of claim, consideration, security if any, and preference or priority claim, if any, and the basis of any claim to such preference or priority. The creditor should be afforded ample opportunity to present such evidence to the receiver or master and arguments in support of his claim, and in opposition to claims of others as he may desire in the regular orderly mode of procedure recognized as obtaining in proceedings before a master.
 
 
 12
 Under the conditions as outlined above a general creditor will not ordinarily be allowed to intervene in the receivership case when as appears on the face of his petition, his rights are fully protected by filing his claim. On the other hand, however, an unsecured creditor may show a set of circumstances which gives the petitioner an absolute right to intervene in order to protect his interests.
 
 
 13
 Barber argues that the claims procedures established by the Receiver is inadequate for his purposes. He states that the claims form does not "fit" his case, and that any ultimate action by the Receiver is subject to review, first, by the Special Master and then by the courts. Such will result in undue delay, asserts Barber. We are not impressed by this argument. Like the district court, we believe the claims procedures set up by the Receiver will permit Barber to protect his claimed interest in the assets presently under the control of the Receiver.
 
 
 14
 Judgment affirmed.